It pleases the Court, Herbert Ray representing Appellant Aquistar. I would like to reserve two minutes of my time for rebuttal. The District Court incorrectly held that Exclusion G in Travelers' policy applied to Aquistar's loss. The issues concerning Exclusion G were extensively briefed. Unless the Court has questions about that, I would like to devote my argument today to discussing the computer fraud covering issue, which Travelers has asked the Court to affirm the District Court on, on the basis that there's no coverage under the covering language. The District Court correctly assumed that losses caused by business email compromise scams fall within the broad covering language in Travelers' policy for computer fraud. The computer fraud definition, which is found at page 7 of Travelers' policy and in the excerpt of record at page 30, has three elements. The criminal has to use any computer, that's element 1, 2, to fraudulently cause, and 3, a transfer of money from the insurance bank to a person or place outside the bank. In this case, there's really no dispute that the transfer element, the third element, was met. So the question on the coverage issue is whether the cybercriminal used any computer to fraudulently cause that transfer. The computer use by the cybercriminal in this case was extensive and pervasive. And I want to emphasize that point because I'm going to come back to it later when we talk about some of the cases that Travelers has cited. The cybercriminal in this case used computers for over a three-month period of time to send dozens of spoof emails that fraudulently tricked Aquastar into believing that its vendor wanted Aquastar to send payments for the vendor's emails to a new bank account. The use of the computer included hacking into Longway's server, using the computer to monitor the email traffic, using the computers to set up spoof email domains, using computers to send spoof emails directed to Aquastar's computer system that showed up on Aquastar's computers looking like they were emails from Longway, Aquastar's vendor. The emails were read on those computers, forwarded on those computers, and ultimately the effect of those spoof emails that were sent over a three-month period of time deceived Aquastar into wiring its money that it was going to use to pay Longway's invoices to the cybercriminal instead of to Aquastar. Under Washington law, when construing an insurance policy, the question is, would a layperson reasonably understand his or her loss to be covered by the covering language? And Aquastar submits that a layperson would very reasonably understand the language that Travelers chose to use in its policy to cover its loss. Travelers urges the court to construe its computer fraud definition in a very narrow way. It tells you it only applies to hacking losses. A hacker has to break into the insurance computer and use that computer to make a transfer. That construction is unreasonably narrow and untenable. The definition of computer fraud says the use of any computer, not just the insurance computer. Fraudulently— Can I interrupt you for just a second, counsel? Yes, Your Honor. Under Washington law, if there's an ambiguity in the policy, in whose favor should that ambiguity be interpreted? The insured, Your Honor. The insured? The insured, yes, Aquastar's. Okay. Fraudulently means to trick or deceive, to cause someone to give someone something of value that they otherwise wouldn't have. If I knock on your door and say I'm collecting donations for the Red Cross, I'm trying to trick you—and I'm not from the Red Cross— I'm trying to trick you into giving me money when you otherwise wouldn't have. And that is what these spoof emails did. They deceived Aquastar into sending its money to someone they otherwise wouldn't have. The policy has a definition of computer violation, and it's on the same page as the definition of computer fraud, page 7 of the policy, excerpt of record, page 30. The definition of a computer violation is damage to a computer system caused by a virus or by a person who gains unauthorized access to the insured's computer system. Now, an insured, looking at page 7 of the policy, would see those two definitions, and they would understand that the computer violation definition refers to hackers. But there is no way you can look at the computer violation definition that specifically refers to hackers and understand the broader definition of computer fraud to be limited to hackers. Well, I have maybe a different question. If I take your point that the coverage is quite broad, and one of the points of the coverage is if computer fraud is the use of any computer that basically ultimately causes this transfer of money, then it's covered under the policy. And there also is a situation where if it was hacking, that would be covered because that relates to the unauthorized use, correct, of the computer. For the computer violation. For the computer violation. But, okay, so then you say, but then you go, I then go to the exclusions. And in some ways they seem like there's a mirror image because this gets me back to exclusion G, which says that the crime policy doesn't apply to loss or damages resulting directly or indirectly from the input of data by a natural person having authority to enter the insurance computer system. So that is setting up this juxtaposition to both specific hacking, where you don't have authority, and to the use of any computer, which is the broader. But all that is undone if someone with authority inputs data into the system, isn't it? Exclusion G, Your Honor, is not limited to the computer fraud coverage. In fact, it applies to all the coverages except employee theft, funds transfer fraud, and a computer violation. And so there are a number, the exclusion can't be read as simply modifying the computer fraud coverage. And if you read it that broadly. It's not modifying. It's an exclusion to. So I guess maybe I'm having some trouble understanding why exclusion G doesn't kick in here. It doesn't kick in for several reasons. Okay. Number one, again, it's not limited to computer fraud. But that doesn't make any difference. It doesn't matter. If it is applicable to computer fraud, tell me why it doesn't apply. Well, because under Washington law, exclusions have to be construed narrowly and in the context of the policy. And so if you interpret exclusion G in the manner that the district court did here, you end up with arbitrary and irrational results. No, you don't. As I understand it, let's see if I have the facts right. Chobankenko was an authorized person, right? Correct. It was her action that caused the money to be sent from Bank of America to the phony bank account in Japan. She set up the transfer. She set up the transfer. So it wasn't a direct action by the fraudster hacking in and telling and using the computer of Aquastar to send the money. There was the intermediate step of an authorized person using her actions to send the money. Isn't that exactly what Exhibit G, I mean, exclusion G contemplates? If you limited the application of exclusion G to computer fraud coverage and read them in parallel, you could get to that kind of a result. But exclusion G is not so limited. And so if you interpret the exclusion to apply any time an insured of the employee of the insured. An authorized employee. Accesses a computer and uses it in some way in the chain of events that lead to a loss, you end up with this exclusion swallowing the coverages that are in the policy. No, because the coverage of the policy still protects a direct hacking and use of the insured's computer without any human intervention by any authorized human. Correct? Yes, Your Honor. For example, in our opening brief, we cited several examples of how that construction of the policy would lead to the kinds of results that I'm referring to. First, we gave the example of even under the computer fraud covering language, a hacker, one of the ways that hackers work is they get into your computer system and they monitor your keystrokes. And then they get access to your passwords. And then they can get onto your computer. And so they might come on and change the accounting records and then set up payments that weren't authorized. Someone in the accounting department then goes on, gets onto the system, logs in completely innocently, not having any idea that the accounting records have been changed, sends out the payments. Exclusion G would bar that if you interpret it that way. Another example would be the coverage for armored car theft. An employee emails the armored car company and says, we need a pickup. A hacker reads those emails, sets up a hijacking, and attacks the armored car because they know the route that the armored car is going to take. The sending of an email, an innocent thing done by the employee, results in a loss of coverage because somebody sent an email. That's not what an insurer would expect this exclusion to cover. There's no court in the country other than the district court below who has interpreted this exclusion this broadly. The Morgan Stanley Court, which interpreted identical language in an exclusion, said that it was intended to apply when authorized persons access the computer system to steal or commit a fraud from the insurer. In addition, under Washington law, the efficient proximate cause rule applies. What that says is when you have a covered peril in combination with an excluded peril, and they're both in the chain of events, you have coverage. In other words, in this case, the computer fraud, the spoof emails, the use of the computer to trick AquaStar into studying this chain of events and emotions leads to this innocent action by Ms. Jobanko to create a spreadsheet that is not in any way causing the transfers. And under the Washington's efficient proximate cause rule, the exception cannot swallow the coverage in that case, in that context. Ultimately, the best guide for this Court is the ---- that the losses were directly caused by computer fraud with no intervening steps, and then you say that the email scheme basically was a chain or a series of events requiring the application of the efficient proximate cause rule. So it seems to me that your two arguments are in collision there in some tension. So, Your Honor, first of all, the emails have to fraudulently cause the transfer. There's no direct cause requirement in the definition of computer fraud. And the transfer itself ---- Sotomayor, but you argued in your brief that they were directly caused by computer fraud. So I'm just using your words. Right. Computer fraud, so you could substitute a fraudulently caused transfer to make this to follow. So the transfer has to directly cause the loss. When I transfer my money, when I wire my money from my bank account to a criminal's bank account, I immediately and directly lose it. There's no intervening steps between the transfer, which is an element of the definition of computer fraud, and my loss. It occurs immediately. Does that address your question, Your Honor? To some degree. Thank you. I appreciate it. What about exclusion H? What is your position on that? Exclusion H, Your Honor, excludes losses resulting from converting documents or instruments, commercial instruments, into an electronic format. And exclusion H, so documents or instruments. Documents, the dictionary definition of documents is ---- of document is something that establishes a proof, so a will or a legal document of some type. You're saying an e-mail is not a document? In this context, an e-mail is not a document, Your Honor. An e-mail is already in an electronic format. This exclusion refers to converting documents to electronic format. And so properly construed, first of all, if you construed document to mean everything in writing, there's no reason to have the word or commercial instruments in the exclusion. Instruments clearly relate to things like bills of lading, promissory notes, and other commercial papers. And this exclusion ---- Well, it's fraudulent documents or written instruments, so ---- or fraudulent written instruments, if you take the adjective to go there. So the real question is instruments seems to be irrelevant if you're really looking at documents. And your argument is that a document can't be an electronic document? A document, if you define document to mean anything in writing, then there's absolutely no reason to have the other clause or instruments in that exclusion. You would interpret that as surplusage, and we have a rule against surplusage. Correct. Second, e-mails are already electronic, and so converting something that's electronic to an electronic format doesn't make sense in the context of the policy. Third ---- Let me ask you, does a document actually even exist if it's an e-mail? Does the document actually even exist until it's created? I may be too old to answer that question. But it's only an electronic form sitting on a computer system. But you're not converting anything. You're creating an e-mail, right? You're not converting a document to an electronic form when you are looking at an e-mail and typing information from the e-mail into a spreadsheet. As opposed to, for example, scanning a document that's a hard copy and scanning and converting it to an electronic document, right? Correct, Your Honor. Okay. The Washington Supreme Court has warned about literal interpretation of exclusions. Insurance companies write exclusions very broadly, and they write covering language very narrowly, contrary to the rules of construction of insurance policies, which is exactly the opposite. You can't apply exclusions literally as they're written because that results in these sorts of exclusions swallowing the coverage. The example that I gave in the brief was the policy that excluded losses due to the release of a pollutant and a tank full of a pollutant ruptured. And the physical impact of that damage or hurt somebody, the Washington Supreme Court said you could literally read this exclusion as it's written to apply, but that's not what was intended in this policy. What we really intended was the release of a pollutant that then causes someone to become ill, not that, you know, causes injury because of the physical impact of the release. The other reason that Exclusion H doesn't apply, Your Honor, is the efficient proximate cause rule again applies. Sotomayor, if we disagreed with your view of the efficient proximate cause, then we're going to be looking at these various exclusions, including Exclusion H. Do you have a position on that? Correct, Your Honor. What's your position on Exclusion H? Which is the documents or the consumer. That's the surrendering money, securities, or other property. Oh, Exclusion R, right, Your Honor. I said R. I misspoke. We already spoke about H. R. Exclusion R is an exclusion that relates to surrendering money in a fraudulent exchange or purchase. There was no fraudulent exchange or purchase between Aquistar and Longway. Aquistar purchased shrimp from Longway. Well, it's an exchange or purchase whether or not fraudulent. So that's what caught my attention. Right. There's no exchange with a cybercriminal. He gave Aquistar nothing of value for its money. That exclusion, as it's been interpreted, is to make it clear that a commercial crime policy does not apply to losses in commercial transactions. So if I sell you 100 widgets and you tell me that they're grade A and I get them when they're grade C and I say you defrauded me, that's not covered in a commercial crime policy. So that you don't think that these wire payments are covered then? They were not part of a transaction, a purchase or exchange with a cybercriminal. Ultimately, Your Honor, the case that probably provides the best guidance to the Court is the Owens case. I know it was vacated by stipulation while it was on appeal, but none of the cases that have been cited are published decisions or precedential. So I encourage the Court to consider Owens, which very carefully considered the traveler's coverage under a similar type of BEC scam, albeit with much less computer use than occurred in this case. And what Owens Court concluded was that travelers didn't really define how much computer use is required, but that a reasonable insured in that case would reasonably understand that its loss was covered. Focusing on the amount of computer use allows the Court to avoid the concern expressed by the Pestmaster panel that if you interpret the policy too broadly, you open the policy up and it becomes basically a general fraud policy. Thank you. I think we've exceeded your time considerably. Thank you. Thank you, Your Honor. I appreciate your argument. Thank you. Good morning. Please, the Court. Gary Valeriano for Travelers. As is apparent from the briefs and the cases cited by both parties here, this is not uncharted territory. There are a number of cases discussing computer fraud coverage from a variety of jurisdictions, including the Ninth Circuit here in the Pestmaster case. And the weight of authority for that law supports travelers' position in this case that it is the unauthorized use of a computer to transfer money that is covered, not the authorized use of a computer to transfer money under false pretenses. There is a difference between breaking into a computer and utilizing it for and duping an employee into using that computer for ultimately nefarious purposes. If we think about this, what happened here didn't require a computer at all. This is a scam, a con that is as old as time. I don't need to use a computer to convince you, if you're gullible, to give me your money because I'm somebody else that you think you owe money to or because I tell you my circumstances are different than they actually are and you take pity on me and give me money. That's been going on since the beginning of time. When we developed a postal service, people started sending letters trying to solicit money. There's a 17th century scam called the Spanish prisoner where somebody was requesting money to get out of a Spanish prison. That's a false pretense. When we finally developed the telephone, the same thing could happen. We don't need a computer to do this. This is duping. There is a fair spreading of the risks here. The insurance company in this case acknowledged that it would cover and protect the insured from any hacking into a computer. This is a legitimate and worrisome concern. The insurer has assumed the risk of someone breaking into your computer, causing it to transfer money from your bank account to some other bank account and stealing that money. Where do we find that in the policy, the language having to do with hacking? That is fraudulently caused. In the definition of computer fraud, as the Pestmaster Court found, fraudulent modifies the term cause. It does not modify the term transfer. You have to fraudulently cause a transfer. If it were the coverage that Aquistar is stating that ---- I'm sorry, but I was asking you about the you use the language hacking. I was wondering where is that in the policy? The literal term hacking is not used in the policy. What section of the policy are you referring to? I'm referring to the insuring agreements. Tell me what section, what paragraph. I don't have the specific section in front of me. That would be quite helpful, because you're forcing us to rely on specific language that you can't point us to. Well, it's the definition of computer fraud in the policy. I mean, that's where you would look to find out what computer fraud is. Right. That's where you would look and I would look. Correct. So you should have it in front of you to look. I apologize. So do you or do you not agree that this was computer fraud? I do not agree this was computer fraud. So in your view, this was not computer fraud? Not computer fraud is defined in the policy, no. So if it was not computer fraud, then we don't even have to go into looking at exclusion R, H, or G. That is absolutely correct. Okay. All right. Got it. So in terms of assuming the risk, here we have a situation, and just to give you the factual background to show. Mr. Valeriano. Yes. I have before me ER 26, computer crime, computer fraud. Is that where you're saying it's defined? The company will pay the insured for the insured's direct loss of or direct loss from damage to money, securities, or other property directly caused by computer fraud? Directly caused by computer fraud, but then there is a definition, Your Honor, of computer fraud in the policy, in the definition section. Right. And that defines computer fraud as to fraudulently cause a transfer of money. And it's the fraudulent cause that is essential in what the past master court, the Ninth Circuit, took to mean hacking. The term hacking was used in that case by the Court. It was used in the Taylor and Lieberman case, which was also a computer fraud case from the Ninth Circuit, albeit California. My difficulty is that there's we have in general now a notion of what hacking is, hacking into computers. But the way this is phrased, it's the use of any computer to fraudulently cause a transfer. Correct. So if the computer is used to set up the fraudulent emails and accounts, and that fraudulently causes a transfer, why isn't it covered? Well, you have a number of, well, because the computer, again, the emails are not the direct cause. Remember, the original insuring agreement talks about resulting directly from computer fraud. So there is that causation element. It must be direct. The use of an email which you receive is one step in a chain which ultimately leads to the transfer of money. But the ultimate transfer of that money is not done by that email. The transfer of money is done by the authorized inputting of the information into the computer. Why does the ---- Your position is there is coverage, but the exclusion cuts it down. No. My position is there has never been coverage, and the exclusions support the fact that there is no coverage. Exclusion G merely underscores what we see in the insuring agreement. The insuring agreement covers the unauthorized transfer of money from the victim to a fraudster. The exclusion is belts and suspenders. It says, look, if you or someone that works for you puts in what you get as false information and you put that into a computer and it ultimately causes a transfer of funds, that's not covered because the person who put that in there had the authority to do so. Now, if anyone acting with authority is putting information into a computer, that's not hacking. Hacking requires somebody without authority to come in and cause this to happen, and that did not happen. Can I ask you a question, though? But didn't this whole scenario start because the computer was hacked to begin with? No. The hacking actually took place on the vendor's side. In other words, whoever the fraudster was somehow managed to secure the vendor's e-mails, found out that Aquistar owed money to the vendor, then duped Aquistar by not using the vendor's e-mail, but by using an e-mail that was very similar to the vendor's e-mail. But wasn't that hacking the efficient cause of this loss in the first place? If there was a person who was authorized to transfer the money, would have never transferred the money, right? I suppose ultimately that is true, yes. Okay, so there was a computer that was used, there was hacking, and there was someone who was duped into believing that they were transferring the money to the people they were supposed to be transferring the money to. Again, if you read it that way, Your Honor, this is a general fraud policy. You don't need a computer to do that again, right? You can do that with a phone call, you can do that with an in-person interview, you can do that with a letter. I mean, the point here is we are preventing the insured has assumed a risk on behalf of the insured that it will protect it against certain causes of loss, those being the invasion of that computer, the fraudulently cause, a transfer. If somebody dupes you into with authority transferring that money, that's a whole different circumstance. Why doesn't the policy say that? I mean, you say that so well, you know. I understand everything you just said. But you're a lawyer, and I used to be one, but the insured isn't. So why doesn't the policy just state that in clear, concise terms? Far be it for me to opine on how policies are written. I will tell you what the Ninth Circuit said in Pestmaster. The Ninth Circuit did say the policy could be better written, but that no insured could reasonably believe that this was a general fraud policy. And therefore, there is no reasonable expectation of coverage under this situation. I have two seconds left, and I thank you. If we were to disagree with you on coverage, what's your position on the Exclusion G? May I have extra time? Yes. Exclusion G is, again, as I said, a belts and suspenders exclusion. But it does apply in any event, because that is exactly the scenario that we have here. Now, Aquistar has presented a number of scenarios in their brief which indicate that Exclusion G is not limited to computer fraud. It covers other insuring agreements as well, forgery, for example. But they use the example, if I may, of somebody creating a forged certificate with a computer and then presenting it to a bank, altered, forged. That theoretically, again, I'm not following really, because, of course, nobody at the bank was authorized to do that, so I'm not quite sure how that would work. But I guess my basic argument would be forgery is forgery. The other example they gave was robbery. What if somebody comes into the bank and steals something, but they gain access because somebody let them in through the use of a computer pad? Or what if somebody steals from your armored car because somebody emailed the crooks as to where you would be? Forgery is forgery, robbery is robbery, and burglary is burglary. Computer fraud is computer fraud. And that's exactly what we have, what they're saying here. What they're saying is the use, as soon as I push that button, I put in the false information unknowingly, but with authorization. I push that button, that money's gone. Of course the exclusion applies. How could it not apply? It is the efficient cause. Well, what if you had a situation where instead of hacking the vendor's computer, this company's computer was hacked, and then you had someone with authority believing that they were transferring the money to, say, one of the people they normally do business with. Someone had authority, they pushed a button, they transferred the money. Would there be coverage? I believe there would be, because the input of data was not authorized. If the scenario you're saying is that a crook somehow put data into the computer, and then the employee simply used that data to transfer money, I believe there's a hacking situation there. Yes. Because you would have the computer would be fraudulently causing the transfer. That's right.  It would be fraudulently causing that transfer. Directly. Directly. I believe so. Okay. Thank you. Thank you. We used all your time, but you have a minute, if you would like, for rebuttal. Thank you, Your Honor. The situation just described, the fraudulent email that was received was in Aquistar's computer system and used to transcribe onto the spreadsheet, so it's not materially different than the hacking question just presented. Pestmaster is an unpublished memorandum of disposition involving a vendor that had obtained authority to make direct withdrawals from the insurance account. The Ninth Circuit panel only said that when you have a withdrawal that's authorized, and later on the vendor steals your money, that transfer wasn't fraudulently caused. It didn't say that hacking is required. Ultimately, the concern about converting this policy into a general fraud policy can be addressed by focusing on the amount of computer usage. Courts have had no problem saying that the use of a phone isn't the same thing as the use of a computer, that the use of a computer in Brightpoint to send a facsimile was too remote and tangential to be considered computer usage, that the use of a computer to draft a prospectus that was relied upon by investors was too remote and tangential to be computer usage under the policy. But the computer usage in this case is far more substantial. And finally, Your Honors, eight years ago, the Owens Court told travelers that its policy language was too broad and was broad enough to cover a BEC scam. Travelers continues to sell this overbroad coverage and ask the courts to unreasonably and unerringly construe it. The laws of insurance require you to construe a covering language broadly and liberally in a manner that a layperson reading the policy would reasonably understand. Travelers ask or Aquistar requests the courts to do that in this case, to vacate the trial court's order, reverse and remand with instructions of interpartial summary judgment on coverage for Aquistar. Thank you, Your Honor. Thank you. Thank you both for the argument. Very interesting case and well-briefed. We appreciate that. The case of Aquistar v. Travelers is submitted.
judges: McKeown, Bea, Benitez